BENTON, Judge.
Winn Dixie Stores, Inc. (Winn Dixie) and Crawford & Company appeal a compensation order insofar as it awards Ricardo La Torre temporary partial disability benefits (making no allowance for any offsets), and (prospectively) authorizes Dr. Lazaro Guerra to provide orthopedic care, including ordering additional magnetic resonance imaging (MRI). We affirm both the award of medical benefits and the award of temporary partial disability benefits, but remand for further proceedings on offsets appellants claim.
Mr. La Torre started working at a Winn Dixie store as a meat cutter on December 31, 1966. “[Ajbout a year or so” later he became meat market manager, a position he had held for some twenty-five years when, on May 20, 1991, he was summoned to the front of the store to help the assistant manager apprehend a shoplifter. While wrestling the shoplifter in the parking lot, Mr. La Torre stepped in a pothole and fell, pulling down the shoplifter on top of him. The shoplifter landed on Mr. Torre’s right knee, injuring the knee. After a period of convalescence, Mr. La Torre resumed full-time work as meat market manager and continued in that capacity for ten months. He stopped work on June 10,1992, because he could no longer see well enough to work.
The judge of compensation claims credited Dr. Guerra’s testimony that further magnetic resonance imaging was indicated, rejecting Dr. Barry’s opinion to the contrary, but many of the findings of fact in the compensation order are not in dispute:
6. The claimant suffers from the residual effects of a torn interior [sic] cruciate ligament, tear of the medial collateral, tear of the medial meniscus, small stable tear of the lateral meniscus, unstable chondroma-lacia of the medial femoral condial and unstable chondromalacia of the lateral femoral condial.
7. Prior to his industrial accident of May 20, 1991, the claimant had a medical history of retinitis pigmentosa that had been diagnosed at Bascom Palmer Eye Institute in 1983.
8. As a result of the injuries sustained in the instant industrial accident, the claimant received medical care....
9. The medical services provided by Dr. Lazaro Guerra were never authorized by the employer/earrier herein. Said services were also not performed on an emergency basis. Accordingly, the employer/earrier is not responsible to pay the past medical bills of Dr. Lazaro Guerra.
10. The claimant underwent a surgical procedure involving the knee, including ar-throscopy of the medial femoral chondrec-tomy and a partial meniscectomy and ar-throscopy of the lateral chondrectomy on July 2,1991.
11. Dr. Patrick Barry opined that the claimant had reached the Plateau of Maximum Medical Improvement and was discharged from further follow up care on January 7, 1992 with a 10% permanent partial impairment to the body as a whole in accordance with the Minnesota Guides. At that time, restrictions pertaining to kneeling and squatting applied to the claimant’s activities.
12. The claimant returned to work after the industrial accident for his employer, Winn Dixie Stores, Inc., and worked as a meat market manager until he stopped working for Winn Dixie Stores, Inc., on June 10, 1992. At that time, the claimant terminated his employment with Winn *1269 Dixie Stores, Inc. because of his retinitis pigmentosa, which had deteriorated to the extent that he was no longer able to drive. Although the claimant continued to work for the employer herein through June 10, 1992, the claimant did so in pain, with limitations and wearing a brace.
18. ... I specifically find that retinitis pigmentosa is usually a hereditary disease of the retina that deteriorates the retina to the point of blindness, and that Mr. La Torre has a severe form of said disease. The claimant, on February 27, 1992, had 20/400 vision in each eye with contact lenses, which means he could only see the big letter E from 20 feet away while a normal person could see said letter at 400 feet away. The claimant also did not have any near vision....
14. At the time the claimant terminated his employment with Winn Dixie Stores, Inc., the claimant was finger counting in each eye, i.e. the claimant could no longer see the big letter E, but could only see ones fingers if they were placed in front of his face.
15. It was Dr. Zareo’s opinion that on June 11, 1992, Mr. La Torre was legally blind and, in all practicality, unable to work except for certain job positions which might be available at the Light House for the Blind which did not require much mobility.
[[Image here]]
18. That the claimant, after terminating his employment with Winn Dixie Stores, Inc., experienced a worsening of his right knee condition, and that there are now activities that he no longer can perform due to his knee that he was able to perform at the time of his termination of employment with Winn Dixie Stores, Inc.
19. Due to the worsening of his knee condition the claimant went to see Dr. Lazaro Guerra.
20. The claimant also saw Dr. Patrick Barry ... [who] indicated that the claimant’s right knee is frankly unstable and recommended a biodex test and mentioned the use of the ACL brace. Dr. Barry indicated that the claimant, if not content with his knee should have an ACL reconstruction. However, he but opined that an MRI would not be beneficial since Dr. Barry is aware of the claimant’s knee condition.
21. ... I accept Dr. Lazaro Guerra’s opinion that Mr. La Torre was unable to work and was in fact temporarily and totally disabled.from July 1, 1993 through September 15, 1993, as a direct result of the injuries sustained in his compensable industrial accident of May 20, 1991. When Dr. Guerra saw the claimant on July 1, 1993, the patient was having significant pain and instability in the knee....
22. It was Dr. Guerra’s opinion that on September 16,-1993, the claimant had progressed sufficiently to be returned to work on a light duty basis with limitations as to the amount of standing, walking, climbing and kneeling that the claimant could perform. It was Dr. Guerra’s recommendation that the claimant should not do any kneeling, should not stand for more than four hours, and should not be doing any climbing and squatting or prolonged walking, and should not walk on uneven ground. Furthermore, restrictions were ongoing in nature.
Workers’ compensation benefits “should include all medical care necessary for the treatment of compensable injury.” See Koulias v. Tarpon Marine Ways, 538 So.2d 130, 132 (Fla. 1st DCA 1989). We find no reason to disturb paragraph twenty-six of the order under review, which authorizes Dr. Guerra to render future medical care. See Champlain Towers v. Dudley, 481 So.2d 532 (Fla. 1st DCA 1986).
Appellants do not question the award of temporary total disability benefits from July 1, 1993, through September 15, 1993. But they maintain that no competent substantial evidence supports the findings of fact on which the award of temporary partial disability benefits thereafter (from September 16, 1993, and continuing) was predicated.
They also complain that the judge of compensation claims applied an erroneous legal standard to effect a “reverse merger,” see Cosmos Contracting Co. v. Courtney, 617 So.2d 439 (Fla. 1st DCA 1993); Pan American World Airways, Inc. v. Franchina, 396 So.2d 245 (Fla. 1st DCA 1981), and question in this connection the order’s extended dis *1270 cussion of the “interrelationship” between Mr. La Torre’s blindness and his knee injury. But they do not invoke section 440.09(l)(b), Florida Statutes (1995).
At issue is the extent to which Mr. La Torre’s industrial accident diminished his ability to earn money working. In construing provisions of a federal workers’ compensation statute covering harbor workers in a case that involved permanent partial disability benefits, Justice Souter recently explained:
Disability is a measure of earning capacity lost as a result of work-related injury. By distinguishing between the diminished capacity and the injury itself, and by defining capacity in relation both to the injured worker’s old job and to other employment, the statute makes it clear that disability is the product of [the work-related] injury and opportunities in the job market.
Metropolitan Stevedore Co. v. Rambo, 11 Fla. L. Weekly Fed. S14, S16 (U.S. June 19, 1997)(emphasis supplied). More restrictively, section 440.15(4)(b), Florida Statutes (1991), provides that an employee cannot recover temporary partial disability benefits without showing that “his inability to ... earn as much as he earned at the time of his industrial accident is due to physical limitation related to his accident and not because of economic conditions or the unavailability of employment.”
In Florida at the time of Mr. LaTorre’s accident, the rule was that “[i]n case of temporary partial disability, benefits shall be based on actual wage loss.” § 440.15(4)(a), Fla. Stat. (1991). A claimant had the burden to prove that a compensable injury was “an element in the causal chain resulting in or contributing to wage loss.” City of Clermont v. Rumph, 450 So.2d 573, 576 (Fla. 1st DCA 1984). In pertinent part, section 440.15(4)(b), Florida Statutes (1991), provides:
Whenever a temporary partial wage-loss benefit as set forth in paragraph (a) may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury.
See Publix Supermarket, Inc. v. Hart, 609 So.2d 1842 (Fla. 1st DCA 1992); Edwards v. Caulfield, 560 So.2d 364 (Fla. 1st DCA 1990). See also Tampa Elec. Co. v. Bradshaw, 477 So.2d 624, 629 (Fla. 1st DCA 1985); Rumph; D & R Builders, Inc. v. Quetglas, 449 So.2d 988, 990 (Fla. 1st DCA 1984); Regency Inn v. Johnson, 422 So.2d 870, 872 (Fla. 1st DCA 1982).
Under our cases, however, an employer is not entitled to receive a windfall when some misfortune unrelated to work befalls an industrially injured employee and prevents his working, if a prior industrial accident would otherwise have entitled the employee to workers’ compensation benefits. See Koulias. See also McClaney v. Dictaphone/Pitney Bowes, 659 So.2d 325 (Fla. 1st DCA 1994). While Mr. La Torre’s retinitis pigmentosa had manifested itself before his industrial accident, the condition was progressive and only became disabling after the accident. Where a noncompensable second cause “has intervened to cloud the issue of entitlement to wage loss benefits, the determinative question remains what compensation, if any, the claimant is entitled to as a result of disability resulting from the com-pensable accident.” Curtis v. Bordo Citrus Prods., 566 So.2d 328, 330 n. 3 (Fla. 1st DCA 1990). See McPherson v. Broward County Sch. Bd., 527 So.2d 238 (Fla. 1st DCA 1988). Because this inquiry centers on the compen-sable “injury as a separate entity,” Curtis, 566 So.2d at 330, we agree with appellants’ contention that the findings regarding the synergy attributed to the combination of Mr. La Torre’s blindness and his knee injury were largely irrelevant.
It was incumbent on the judge of compensation claims to determine what effect the knee injury alone would have had in the absence of retinitis pigmentosa. In deciding this question, the usual requirement that an injured employee show a change in employment status attributable to the compensable accident, see Stacy v. Venice Isles Mobile Home Park, 635 So.2d 1039, 1042 (Fla. 1st DCA 1994)(“a claimant bears the initial burden to demonstrate entitlement to temporary disability benefits, either total or partial, upon a change in employment status due to a compensable injury”); Tampa Gen. Hosp. v. Lawson, 547 So.2d 260 (Fla. 1st DCA 1989); Custom Paints v. Philbrick, 490 So.2d 1352, 1353 (Fla. 1st DCA 1986), becomes instead a *1271 requirement that Mr. La Torre show that he would.have had to stop working full-time— i.e., that a change in employment status would have occurred — if disabling vision problems had not already resulted in his unemployment.
Applying this standard, the judge of compensation claims found that, because of the knee injury, Mr. La Torre could not have worked at all from July 1, 1993, to September 15,1993, whatever his visual acuity might have been, and awarded temporary total disability benefits accordingly. In other words, the judge of compensation, claims concluded that a change in employment status would have occurred on account of the knee injury, even if Mr. La Torre had not been blind. Appellants have abandoned any attempt to overturn this award of temporary total disability benefits, or the findings on which it rests, nor do we see any reason to disturb the award.
Entitlement to temporary partial disability benefits thereafter hinges on whether Mr. La Torre could have returned to full employment (if he had not been blind) once his orthopedic restrictions were modified to permit him to perform “light duty.” When an injury results in an employee’s losing a job, proof that an ensuing loss of wages was caused by the injury often entails a detailed showing of a good faith “job search.” Here the judge of compensation claims understandably found such a showing unnecessary, on grounds that “when one combines the interaction between the knee injury and the retinitis pigmentosa, job search requirements on this claimant are unrealistic and futile.” See Dade County Sch. Bd. v. Gibavitch, 397 So.2d 1142 (Fla. 1st DCA 1980). It should also be recalled that a “valid job search is not an absolute condition precedent to an award of partial disability wage-loss benefits, but only an evidentiary burden.” Austen Constr. Management Corp. v. Waters, 508 So.2d 763, 764 (Fla. 1st DCA 1987).
On the other hand, neither the apparent futility of a job search in the circumstances of the present ease, nor the judicial dispensation below, proves a job-related disability. See Thompson v. City of Jacksonville, 654 So.2d 1178, 1179 (Fla. 1st DCA 1995)(holding that “[ejxeusing a claimant from the work search responsibility does not ... permit a compensation award unless the circumstances demonstrate the necessary causal relation and change in employment status” (quoting Nickolls v. University of Florida, 606 So.2d 410, 414 (Fla. 1st DCA 1992)(Allen, J., concurring))).
The decisions also establish that an employee is entitled (in a case with no intervening cause of disability) to temporary partial disability benefits, if medical restrictions attributable to his industrial injury prevent his return to full employment. See, e.g., Jerry v. Farm Stores, Inc., 576 So.2d 405 (Fla. 1st DCA 1991). As of September 16, 1993, however, when Dr. Guerra modified the orthopedic restrictions that prohibited Mr. La Torre’s working — and would have prohibited his working, even if he had not gone blind— appellants contend that he could have returned to his prior work, but for his blindness.
This contention is not without substance, even though the “issue of whether the claimant has shown a causal relationship between his or her compensable injury and the wage loss claimed is one of fact to be determined by the JCC upon a consideration of the totality of the circumstances.” Betancourt v. Sears Roebuck & Co., 693 So.2d 680, 684 (Fla. 1st DCA 1997). As the judge of compensation claims found, Mr. La Torre stopped work at Winn Dixie the second time because of his blindness (not because of his knee). He cited blindness on his applications for Social Security disability income, on his application for benefits from his employer-sponsored disability insurance program, and on his requests for leave of absence from Winn Dixie, and never mentioned his knee on any of these forms. After his knee problems recurred, when asked if he would still be working if he did not have retinitis pigmento-sa, Mr. La Torre answered: “I think I would still be working for Winn Dixie.”
But the order under review finds that the condition of Mr. La Torre’s knee grew worse after the initial recurrence, and makes detailed findings to the effect that Mr. La Torre would have been unable, because of his knee injury, to earn wages he could have earned on and after September 16,1993, if he *1272 had not been blind. Although a meat market manager, Mr. La Torre unloaded heavy boxes from trucks when he worked for Winn Dixie. Among other things, the judge of compensation claims found “that the instability to the right knee caused him to fall, injuring his left knee as documented by the bruises to the knee described and examined on the May 17, 1994 visit.” “Even in a case where we would have reached precisely the opposite conclusion from the evidence (if we had been the finder of fact) we are bound by the ... findings, unless they laek any substantial support in the record.” Chicken ‘N’ Things v. Murray, 329 So.2d 302, 306 (Fla.1976). Competent substantial evidence supports key findings here.
Accordingly, we affirm both the award of medical benefits and the award of temporary partial disability benefits, but remand for further proceedings on the offsets appellants claimed below.
ERVIN and KAHN, JJ., concur.