943 So.2d 226 (2006)
PAVILION APARTMENTS and Claims Center, Appellants,
v.
William WETHERINGTON, Appellee.
No. 1D05-3824.
District Court of Appeal of Florida, First District.
November 6, 2006.
Rehearing Denied December 7, 2006.
*227 Kimberly A. Hill of Conroy, Simberg, Ganon, Krevans & Abel, P.A., Hollywood, for Appellants.
Kara Berard Rockenbach and Kent S. Pratt of Gaunt, Pratt, Radford & Methe, P.A., West Palm Beach, for Appellee.
BENTON, J.
We affirm the order requiring Pavilion Apartments and Claims Center to reinstate William Wetherington's permanent total disability and supplemental indemnity benefits, with penalties and interest from the date they were suspended, and to furnish the prescribed medical benefits he seeks.
For several years, Pavilion Apartments, Mr. Wetherington's former employer, and Claims Center, its insurer, made permanent total disability payments and furnished medical benefits necessitated by compensable accidents occurring on December 20, 1993, and April 20, 1994. On January 11, 2005, however, Pavilion Apartments and Claims Center cut off medical and indemnity benefits alike and filed two form notices of denial, one of which stated: "Carrier is suspending PTD[.] Claimant is able to work." The other, at issue here,[1] stated: "The claim [for medical and indemnity benefits] is denied in its entirety, pursuant to Florida Statutes 440.105 and 440.0[9]."
Following clandestine, videotaped surveillance of Mr. Wetherington's activities over a period of some seven months, a deposition (later to be asserted as justification for cutting off benefits) took place on October 25, 2004. This deposition was an "update" in the course of proceedings Mr. Wetherington had instituted to obtain authorization for an intrathecal, morphine pump: Two authorized physicians had prescribed such a pump for relief of pain, but Pavilion Apartments and Claims Center had refused to furnish one.
On appeal, as below, Pavilion Apartments and Claims Center invoke section 440.09(4), Florida Statutes (2004),[2] *228 which renders an employee ineligible for workers' compensation benefits if it is "determine[d] that the employee has knowingly or intentionally engaged in any of the acts described in s. 440.105 . . . for the purpose of securing workers' compensation benefits." § 440.09(4)(a), Fla. Stat. (2004). Section 440.105 places requirements on claimants not unlike the duty of candor an attorney owes a tribunal she is addressing. See R. Regulating Fla. Bar 4-3.3(a) (2006) ("Candor Toward the Tribunal"). Section 440.105 provides in relevant part:
(4) Whoever violates any provision of this subsection commits insurance fraud, punishable as provided in paragraph (f).
. . . .
(b) It shall be unlawful for any person:
. . . .
2. To present . . . any . . . oral statement as part of, or in support of, a claim for payment or other benefit . . . knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim.
§ 440.105(4)(b)(2.), Fla. Stat. (2004). Where a section 440.09 defense is raised, the "JCC is . . . required to determine whether Claimant knowingly or intentionally made any false, fraudulent, incomplete, or misleading statement, whether oral or written, for the purpose of obtaining workers' compensation benefits, or in support of his claim for benefits," Village of N. Palm Beach v. McKale, 911 So.2d 1282, 1283 (Fla. 1st DCA 2005), and those raising the defense have the burden of proof by a preponderance of the evidence. Id.
The Workers' Compensation Act contains no authority for the suspension of benefits based on a payor's unilateral determination that a claimant has violated sections 440.09 and 440.105, Florida Statutes (2004). As we said in Isaac v. Green Iguana, Inc., 871 So.2d 1004, 1007 (Fla. 1st DCA 2004):
Section 440.09(4) contemplates that, before benefits may be denied pursuant to the statute, there must be a showing [and an official determination] that the claimant made "oral or written statements concerning facts material to his claim that he knew were false, misleading or incomplete at the time the statements were made."
(quoting Village Apartments v. Hernandez, 856 So.2d 1140, 1142 (Fla. 1st DCA 2003)) (alterations omitted). The order under review observes, moreover: "Interestingly, when all benefits were denied in January, 2005, the adjuster, Laurie Sudduth, who denied them, had neither read the Claimant's deposition nor viewed the video surveillance."
Here, Pavilion Apartments and Claims Center sought to prove that Mr. Wetherington made false, incomplete or misleading statements at his deposition on October 25, 2004.[3] Appellants' argument that the judge of compensation claims misapplied the law is wholly without merit.[4] *229 He recognized that disqualifying statements may be "made to health care providers, or during testimony given at depositions or the merits hearing." Village Apartments, 856 So.2d at 1141. "[I]f, at the time he made any of the[ ] statements, [a claimant] knew they were false, incomplete or misleading, then the statements fall within the scope of section 440.105(4)(b)2., and, pursuant to section 440.09(4), result in the loss of workers' compensation benefits." Id. at 1142.
At the hearing in the present case, the judge of compensation claims received in evidence transcripts of the deposition testimony given by Mr. Wetherington,[5] his doctors, and the adjusters administering his claim, along with the surveillance videotapes. Mr. Wetherington, Georgia Wetherington, his wife, and Noel Cyr, a friend, testified in person.[6] Following the hearing, the judge of compensation claims entered the order under review, which found that
[t]he Claimant's deposition testimony, which was at the heart of the Employer/Carrier's fraud defense, was truthful and consistent with his live testimony before me, although not without hesitation in some instances. I find the Claimant, his wife Georgia Wetherington and Noel Cyr to be credible witnesses, having had an opportunity to observe their demeanor while testifying, and their knowledge about that which they testified.
Responding to defense arguments below, the judge of compensation claims pointed out in the order on appeal that "[t]here were certain specific areas of testimony that the Employer/Carrier focused on which they assert constituted fraud in light *230 of the deposition statements of the Claimant and the video surveillance admitted into evidence which I have carefully reviewed." Addressing the "specific areas" alleged to constitute fraud, including Mr. Wetherington's use of a cane, the judge of compensation claims reconciled, in detail, Mr. Wetherington's deposition testimony with the videotapes, the testimony received live at hearing, and the deposition testimony of his doctors.
Like the doctors, the judge of compensation claims found nothing in the videotapes demonstrating that Mr. Wetherington had exaggerated his limitations during his deposition or that he had made any materially false statement about his activities, including the use of the cane his wife had given him. In some seven months of video surveillance, except for a single day on which  although he was not using the cane  he was either walking with an altered gait or leaning on something stationary for support, Mr. Wetherington was videotaped using his cane. The judge of compensation claims examined meticulously every "misrepresentation" Pavilion Apartments and Claims Center claimed Mr. Wetherington had been guilty of, ultimately determining that "the Claimant did not knowingly make false, fraudulent or misleading oral or written statements for the purpose of obtaining benefits." This reflects an accurate understanding of the legal determination the lower tribunal was required to make, and amounts to a finding of ultimate fact fully consonant with the evidence of record.
All the subsidiary findings of fact in the order under review are amply supported by competent evidence, as well. Appellants' counsel's "strongest" argument on appeal depended on erroneously stating one key finding of fact and arguing from the misstatement in her initial brief,[7] as follows:
The . . . statements of the Claimant [during his deposition] are clearly a falsehood. . . . .
Interestingly, the Judge of Compensation Claims recognized the following:
. . . In deposition he testified that he used [the cane] all of the time. However, he also testified that he can walk without the cane, though not well, and can stand without the cane . . . On video, the Claimant walked without [sic] the cane except for March 13, 2004. He testified that when he is not using the cane there is always something nearby for support. The video clearly shows the Claimant at times walking with an altered gait. The Claimant, during the building activity, was taking additional oral medicine *231 in order to endure the short periods of physical activity.
The bolded finding, above, reveals that even the Judge of Compensation Claims recognized that the Claimant walked without the cane, except on one of the days that video surveillance was obtained. The remainder of the above paragraph contains the Judge of Compensation Claims' attempt at rationalizing the Claimant's misstatements about his use of the cane which cannot be reconciled with the surveillance. . . . [Mr. Wetherington] testified that he can walk without the cane, but he doesn't.
(Emphasis in original.) Substituting "without" for "with," appellants' counsel blithely misstated the order under review and went on to misrepresent the order as "reveal[ing] that even the Judge of Compensation Claims recognized that the Claimant walked without the cane, except on one of the days that video surveillance was obtained," (emphasis in original), thus turning the record on its head. In fact, the order under review states precisely the opposite:
BASED UPON my review of the live testimony, exhibits presented, as well as argument of counsel for the respective parties, I make the following findings:
. . . .
2. There were certain specific areas of testimony that the Employer/Carrier focused on which they assert constituted fraud in light of the deposition statements of the Claimant and the video surveillance admitted into evidence which I have carefully reviewed. For instance, Claimant's use of a cane was an issue. In deposition [Mr. Wetherington] testified that he used it all of the time. However, he also testified [in the same deposition] that he can walk without the cane, though not well, and can stand without the cane.
3. On video the Claimant walked with the cane except for March 13, 2004.
(Emphasis supplied.) The record also contains notes made in connection with the video surveillance by Pavilion Apartments' and Claims Center's own investigator, notes which make unmistakably clear that Mr. Wetherington was regularly and repeatedly seen using his cane.
To reiterate, the record fully supports the findings that the judge of compensation claims made with regard to Mr. Wetherington's customary use of the cane and the more general finding and conclusion that:
I find the Claimant did not knowingly make false, fraudulent or misleading oral or written statements for the purpose of obtaining benefits. The Employer/Carrier has failed to sustain their burden on the fraud defense.
We wish we could have the same confidence in the veracity and good faith of the statements in appellants' brief written for the purpose of avoiding responsibility for benefits due an injured worker under the Workers' Compensation Act.
Affirmed.
BROWNING, C.J. and ERVIN, J., concur.
NOTES
[1] At issue at the hearing before the judge of compensation claims, Pavilion Apartments and Claims Center stipulated, was the "fraud defense" they raised  not whether Mr. Wetherington was able to work. As for the other issue they litigated and lost below, they have not appealed the determination  based on uncontroverted evidence  that the intrathecal, morphine pump was medically necessary.
[2] Mr. Wetherington's compensable work injuries occurred on December 20, 1993, prior to the enactment of section 440.105, which took effect on January 1, 1994, see Ch. 93-415, § 12, at 93-94, Laws of Fla., and on April 20, 1994. As amended by ch.2003-412, § 6, at 3877, Laws of Fla., section 440.09(4)(a) provides:

An employee shall not be entitled to compensation or benefits under this chapter if any judge of compensation claims . . . determines that the employee has knowingly or intentionally engaged in any of the acts described in s. 440.105. . . . This section shall apply to accidents, regardless of the date of the accident. For injuries occurring prior to January 1, 1994, this section shall pertain to the acts of the employee described in s. 440.105 . . . occurring subsequent to January 1, 1994.
§ 440.09(4)(a), Fla. Stat. (2004); see Ch. 93-415, § 5, at 77, Laws of Fla. (creating section 440.09(4), Florida Statutes). The defense claimed Mr. Wetherington made false, incomplete or misleading statements in October of 2004.
[3] Trial counsel for Pavilion Apartments and Claims Center argued to the judge of compensation claims:

It's Mr. We[ ]therington's own testimony at deposition on October 25, 2004 that violates this statute.
During that deposition he was asked questions, simple questions, do you use your cane all the time,. . . . Response is yes, yes. The video surveillance shows differently. These are . . . actually outright lies.
But it's followed by misstatements, it's followed by incomplete statements. Well, I have to hold on to something.
[4] The initial brief argues that the judge of compensation claims applied the wrong legal standard as evidenced by a focus on such purportedly irrelevant matters as the facts that "the Claimant did not `violate' the restrictions imposed by various physicians," "the Claimant walked with an altered gait," and "the Claimant did not tell his physicians that he could not do the activities as depicted on the surveillance tapes." The record shows, however, that these findings  dismissed in the initial brief as "superfluous"  were in direct response to arguments Pavilion Apartments and Claims Center made below that Mr. Wetherington had misrepresented his situation to his doctors. Pavilion Apartments and Claims Center do not, incidentally, argue on appeal that the judge of compensation claims erred in rejecting the arguments they made below, then abandoned. After seeing the videotapes, Mr. Wetherington's physicians testified that he did not misrepresent anything to them, and that he had informed them that he regularly attempted to perform several of the very household activities about which Pavilion Apartments and Claims Center were concerned  information noted in medical charts prior to the suspension of benefits.
[5] Mr. Wetherington testified on deposition in response to counsel's questions with respect to his use of the cane he took with him to the deposition:

Q I notice that you are here with a cane today.
A Yes, ma'am.
Q Do you use it all the time?
A Yes, ma'am.
Q Are you able to walk without it?
A Not very well, and I don't do it because I use it to help carry a lot of weight on it.
. . . .
Q If you don't use your cane, is your gait altered then?
A Yes, ma'am.
Q Are you capable of standing without the cane?
A I can stand for a little, yeah.
[6] Mrs. Wetherington testified that her husband has difficulty sleeping at night, and has to take breaks every forty-five minutes or so when engaged in any physical activity. She testified that any time her husband did engage in physical activity, it was followed by long periods of having to lie flat, using heat to help him feel comfortable, and the pain he felt after the activity would last anywhere from hours to days or longer. She testified he has good and bad days, although the bad days had become more frequent. She also testified that she had purchased a cane  it was her idea, not a doctor's prescription  for him to assist with his balance, comfort and confidence in walking.
[7] The initial brief misrepresents the record in arguing from this false premise, see generally Thomas v. Patton, 939 So.2d 139, 142 (Fla. 1st DCA 2006) (noting, in upholding award of fees pursuant to section 57.105, Florida Statutes, that "[a]ppellant relies on such accusatory language presumably because no law supports appellant's arguments"), including in this confusing tirade:

In further justification of the Claimant's lie about walking without the cane, the Judge found that the Claimant could stand without the cane. There is a distinction between standing and walking, although the Judge doesn't seem to recognize it.4
[FN4] Standing means: remain upright; erect; stationary and walking means: to advance on foot; move by steps.
Shrilly and unremittingly, the initial brief persists in this vein, reaching an unseemly and unsupported crescendo in arguing that "the Judge of Compensation Claims justified this lie [about Mr. Wetherington's use of the cane]," "failed to recognize any of this and seems to have decided to make excuses for the Claimant to justify his behavior," and made findings appellants' counsel characterized as "ludicrous."