ON MOTION FOR REHEARING
THOMAS, J.
This cause is before us on Appellees’ motion for rehearing. We GRANT the motion and, accordingly, withdraw our former opinion of July 22, 2011, and substitute the following opinion in its place.
In this workers’ compensation case, Claimant challenges an order of the Judge of Compensation Claims (JCC) denying benefits on the ground she violated section 440.105, Florida Statutes (2006), by making false or misleading statements for the purpose of obtaining workers’ compensation benefits. For the reasons expressed below, we affirm the JCC’s finding that Appellant provided false statements, in violation of the statute.
“It shall be unlawful for any person ... [t]o knowingly make ... any false, fraudulent, or misleading oral or written statement for the purpose of obtaining or denying any benefit or payment under this chapter.” § 440.105(4)(b), Fla. Stat. (2006). An employee found to have knowingly or intentionally done so is not entitled to benefits. § 440.09(4)(a), Fla. Stat. (2006). Here, the JCC found “Claimant intentionally or knowingly has made numerous false and misleading statements with regards to the extent of her current injuries and which were made for the purpose of obtaining workers’ compensation benefits in violation of section 440.105(4)(b), Fla. Stat. These statements include reporting pain complaints grossly out of proportion to the physical findings on examination and diagnostic studies.” The record supports the JCC’s findings.
Claimant verbally rated her pain as four to eight on a scale of one to ten, and in writing rated her pain as “5 out of 10.” Claimant’s reports of pain were statements, and they were proven to be false or misleading by Dr. Rogozinski’s testimony that Claimant’s behavior was inconsistent with these statements, testimony which the JCC accepted. Dr. Rogozinski was the Employer/Carrier’s (E/C) independent medical examiner. Specifically, Dr. Rogo-zinski testified:
The patient was observed walking into the exam room with absolutely no difficulty whatsoever; however, when she was sent to x-ray room, she was in such severe pain that it necessitated the help of her attorney to ambulate there. But, once again, after her attorney had left and she left the exam room at the end of the evaluation she performed this with no problem whatsoever.
He also testified: “At the time of the physical exam, the patient had been sitting on the edge of the table with her legs dangling for 22 minutes. Throughout the entire interview she had absolutely no pain, no signs of discomfort, no posturing or change in positions.” When asked about Claimant sitting on the table with *272 her legs dangling, he explained, “People with back pain hate that. It puts a stretch on the sciatic nerve.”
Dr. Rogozinski also testified:
She was theatrical in the exam. Within the first few minutes of the exam, in spite of the fact that I only asked her to walk and did a visual exam of her back, she began crying. She mobilized with severe difficulty and ambulated with a normal gait. She used no assisted [sic] devices. She was not standing in a crouched posture.
He explained:
She mobilized with severe difficulty, which means she goes from one position to the other one with great difficulty, but has a normal gait pattern. You would expect somebody in that severe pain to be crouched. The reason we c[r]ouch is that we shorten our muscles and decrease the strain on the long muscles of the back, the pelvis and the hamstring. So she wasn’t doing that.
Dr. Rogozinski further testified: “Pelvic torso rotation was bilaterally positive at 25 degrees to either side. Quite strangely, at the end of the exam, she mobilized from a supine to a standing position while performing a sit-up maneuver without any arm assist.”
In explaining the significance of this, Dr. Rogozinski said:
Pelvic torso rotation is a sign that with the patient standing and arms folded across the chest, the examiner actually rotates the pelvis and the spine moves with the pelvis completely. Even in people with severe back pain, that particular maneuver is used to discriminate people who are malingering and nonmal-ingering. Pelvic torso rotation should cause absolutely no pain.... With her, even the 25 degrees [purportedly caused pain]. As I said at the end of the exam she mobilized from lying down to a standing position by performing a sit-up maneuver. People with back pain never do that. They roll onto their side and then they stand up, because of the discomfort that a sit-up maneuver causes.
Dr. Rogozinski also testified: “Her knees had full painless range of motion. During the knee exam, the patient was able to hold both feet extended, sitting in a 90/90 position with absolutely no signs of any back pain or discomfort, or extension of the lumbar spine.” Explaining, Dr. Ro-gozinski testified:
When you said [sic] 90/90, it means you’re sitting on the end of the exam table, with your legs dangling, okay, and that shortens the sciatic nerve. As you see, she was able to extend both feet, meaning she straighte[ne]d out both her knees simultaneously. People who have any significant back pain, back spasm or sciatic will not let you straighten their leg out, not even one, let alone two in that position. And she volitionally was able to extend both her legs simultaneously without hyperextending her back, which doesn’t correlate with people with back problem [s].
He further explained that he did not notice any muscle spasm, even though, “in a person with a presentation that Jerette Lucas claimed,” he “would expect to either be able to palpate someone physical exam [sic] and be able to see that there’s loss of lordosis on the x-ray, which neither of those was present.”
Dr. Rogozinski additionally testified that physical tests indicated Claimant’s condition did not demonstrate a spine condition: “[M]uscle testing being five out of five, that’s normal. Neurologically has no atrophy. Pinwheel is intact. Reflexes are normal. And has root tension signs. So she has no protocolizing signs, as we say, as far as her neurologic and musculoskele- *273 tal exam.” When specifically asked whether Claimant’s statements of pain correlated to his findings on physical exam, Dr. Rogozinski stated, “No.” He further opined that Claimant was malingering, defining “malingering” as “somebody’s faking it, in simple terms.” When asked, “Is it your medical opinion that Jerette Lucas is faking?” Dr. Rogozinski answered, ‘Yes.” On cross-examination, he was asked whether there exist “people who can have a mental feeling or a psychological feeling that they’re in pain even though there is no physical correlation to that”; he responded, “I think within the scope of orthopedic surgery I’d say no.” Again, he was asked, “there aren’t people who feel like something causes them pain even though there cannot be a pain generator found?” and he responded, “No.”
This court explained in Dieujuste v. J. Dodd Plumbing, Inc., 3 So.3d 1275 (Fla. 1st DCA 2009), that, although the basis of a misrepresentation defense must be a claimant’s oral or written statement, an employer/carrier can prove that statement constitutes misrepresentation by presenting evidence of the claimant’s nonverbal conduct inconsistent with that statement, and convincing a JCC of its veracity. In Dieujuste, this court reversed the finding of misrepresentation because a video surveillance constituted the only evidence in the record of Claimant’s condition and “there was nothing on the [surveillance] video which was inconsistent with Claimant’s statements or presentation to them, and Claimant’s activities in the video were consistent with his objective, painful knee condition.” Id. at 1277. Here, in contrast, Dr. Rogozinski’s extensive testimony, set forth above and accepted by the JCC, was evidence of Claimant’s nonverbal conduct, inconsistent with her reports of pain, which was sufficient to support the JCC’s finding of misrepresentation. Therefore, the JCC’s order is AFFIRMED.
PADOVANO and LEWIS, JJ., concur.