ALTENBERND, Judge.
Kenneth Michael Carroso appeals his judgment and sentence for workers’ compensation fraud involving a “monetary value” between $20,000 and $100,000. See § 440.105(4), Fla. Stat. (2005). Although he has already fully served his fourteen-month prison term for this offense, we reverse the judgment and sentence and remand for a new trial. In this case of first impression, the State and the trial court erroneously equated the “monetary value” that is an element of this criminal offense with the monetary amount of the noncriminal, administrative sanction available under section 440.09(4)(a), Florida Statutes (2005). This overarching error resulted in the admission of irrelevant evidence and an improper jury instruction. These preserved errors entitle Mr. Carro-so to a new trial.
I. THE UNDERLYING WORKERS’ COMPENSATION CASE
Mr. Carroso was employed by Sunwest P.E.O. on July 20, 2005.[1] On that day, while in the course and scope of his employment, he was involved in a truck accident. While he was riding as a passenger, Mr. Carroso was teaching another employee how to drive the truck. The trainee oversteered and overbraked going into a corner, and the truck rolled over. It is undisputed that Mr. Carroso was injured in this accident. He sustained a spiral fracture of his left arm. He apparently developed complications in this arm. He had surgery for a torn rotator cuff and complained of lower back pain.
Mr. Carroso received medical treatment authorized by Sunwest’s workers’ compensation carrier, First Commercial.[2] As *376 explained in greater detail later in this opinion, First Commercial also paid him temporary total disability benefits from July 26, 2005, through August 24, 2006.
During the workers’ compensation proceedings, Mr. Carroso was deposed on February 14, 2006. In that deposition, Mr. Carroso allegedly made misleading statements or omissions regarding some relatively minor medical or chiropractic treatment he had received years earlier, possibly related to prior off-the-job automobile accidents. After the deposition, First Commercial reported the possible fraud to the State. It should be noted that the evidence in our record does not establish the outcome of the workers’ compensation proceeding or whether the judge of compensation claims took any action on the alleged misstatements in this deposition.[3]
II. THE CRIMINAL PROCEEDING
The State charged Mr. Carroso with insurance fraud in the second degree, under sections 440.105(4)(b)(l) and (4)(f)(2), Florida Statutes (2005). Section 440.105(4)(b)(l) states that it shall be “unlawful” for any person: “To knowingly make, or cause to be made, any false, fraudulent, or misleading oral or written statement for the purpose of obtaining or denying any benefit or payment under this chapter.” Section 440.105(4)(f) provides the penalties for violating this statute:
If the monetary value of any violation of this subsection:
1. Is less than $20,000, the offender commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
2. Is $20,000 or more, but less than $100,000, the offender commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
3. Is $100,000 or more, the offender commits a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
The “monetary value of any violation of this subsection” is an element of the crime. Cf. Insko v. State, 969 So.2d 992 (Fla.2007) (holding age of defendant is element of crime of lewd and lascivious molestation under section 800.04(6), Florida Statutes (2001), analogizing to value as element of third-degree grand theft under section 812.014, Florida Statutes (2001)).
Although the issue of intent is not presented in this appeal, it should be observed that this offense is a specific intent crime. See Linehan v. State, 442 So.2d 244, 246-48 (Fla. 2d DCA 1983) (explaining the distinction between general and specific intent crimes). Thus, it was not enough for the State to prove that Mr. Carroso misstated facts or omitted facts in his deposition. The State was required to prove that he made misrepresentations *377 “for the purpose of obtaining ... any benefit or payment under this chapter.” § 440.105(4)(b)(l). One would expect that the State in such a case would need to identify, with some degree of particularity, a benefit or payment that the defendant was seeking to obtain when making a misrepresentation that he at least anticipated would be unavailable under the true facts.
The existence of prior medical conditions does not necessarily preclude workers’ compensation benefits under the Florida Workers’ Compensation Law. Any benefit available under chapter 440 can be payable despite an injured worker’s preexisting injuries and conditions. See § 440.02(1), Fla. Stat. (2005) (explaining that benefits can be payable for aggravation or acceleration of preexisting injury). For example, an injured worker can be entitled to temporary workers’ compensation disability benefits even when he or she is totally disabled from a condition unrelated to the workplace injury, if it is also established that the workplace injury “as a separate entity” would entitle the injured worker to workers’ compensation disability benefits. See Winn Dixie Stores, Inc. v. La Torre, 702 So.2d 1267, 1270 (Fla. 1st DCA 1997) (explaining that an employer cannot escape payment of workers’ compensation disability benefits because of unrelated disability, where compensable injuries would “otherwise have entitled the employee to workers’ compensation benefits”). Thus, it is not obvious from this record that any of the information concerning prior medical or chiropractic treatment that Mr. Carroso may have failed to disclose would have had any bearing on the outcome of his workers’ compensation claim.
The State’s reliance on the noncriminal, administrative sanction in this trial tended to minimize the evidence on this element of intent. At any retrial, proof of this element may prove challenging for the State unless its evidence is substantially different from the evidence in this record.
In this appeal, the focus is on section 440.105(4)(f)’s reference to a “monetary value.” That term is not defined in the statute. Because this statute is a criminal offense, the legislature requires this court to strictly construe it in a manner most favorable to the defendant. See § 775.021(1), Fla. Stat. (2005). We do not attempt any comprehensive definition of “monetary value” in this case. We merely hold that the trial court’s reliance on the noncriminal, administrative sanction as a measure of “monetary value” was incorrect.
III. THE NONCRIMINAL, ADMINISTRATIVE SANCTION
Before describing the two preserved issues on appeal, it is helpful to examine the statute that led the trial court astray. Section 440.09(4)(a) provides for a noncriminal, administrative sanction in the event that a claimant knowingly makes any false, fraudulent, or misleading statement for the purpose of obtaining any benefit under the workers’ compensation laws. Section 440.09(4)(a) states:
An employee shall not be entitled to compensation or benefits under this chapter if any judge of compensation claims, administrative law judge, court, or jury convened in this state determines that the employee has knowingly or intentionally engaged in any of the acts described in s. 440.105 or any criminal act for the purpose of securing workers’ compensation benefits. For purposes of this section, the term “intentional” shall include, but is not limited to, pleas of guilty or nolo contendere in criminal matters. This section shall apply to accidents, regardless of the *378 date of the accident. For injuries occurring prior to January 1, 1994, this section shall pertain to the acts of the employee described in s. 440.105 or criminal activities occurring subsequent to January 1,1994.
This statute is most frequently addressed in the context of an order of a judge of compensation claims granting or denying benefits. See, e.g., Lucas v. ADT Sec. Inc./Sedgwick CMS, 72 So.3d 270 (Fla. 1st DCA 2011); Pavilion Apartments v. Wetherington, 943 So.2d 226 (Fla. 1st DCA 2006).[4]
The First District, which has jurisdiction over appeals from workers’ compensation proceedings, has held that the administrative forfeiture of benefits under section 440.09(4)(a) does not require any nexus between the false statement and the benefits forfeited. See Rustic Lodge v. Escobar, 729 So.2d 1014, 1015 (Fla. 1st DCA 1999) (“[S]ection 440.09(4) ... does not limit a claimant’s forfeiture to those benefits that may have been obtained by virtue of the claimant’s unlawful conduct.”). The First District has interpreted the sanction in section 440.09(4)(a) to result in the cessation of an injured employee’s entitlement to any unpaid workers’ compensation benefits, but it has not required a return of or restitution for benefits already lawfully paid prior to the claimant’s misrepresentation. Thus, the sanction under section 440.09(4)(a) turns off the tap from which workers’ compensation benefits flow.[5] See Alvarez v. Unicco, 958 So.2d 951, 952 (Fla. 1st DCA 2007) (holding judge of compensation claims is not required to order payment of benefits for “a period preceding the determination of a violation of section 440.09(4)”).
IY. THE ERRORS ARISING FROM THE APPLICATION OF SECTION 440.09(4)(A) IN THIS CRIMINAL TRIAL
The attorney who represented First Commercial in the workers’ compensation case testified at this criminal trial. Because the only document from the workers’ compensation case in evidence was Mr. Carroso’s deposition, her testimony focused on that deposition. The State asked the attorney only one question relating to “monetary value.” The State asked her: “In general, if there is fraud found in a deposition, does that affect the payments?” The attorney answered: “Absolutely.” The State did not ask the attorney to explain the effect. On cross-examination, the defense attorney asked the witness to clarify this answer and the witness stated that “[ijt’s a forfeiture of rights under *379 Workers’ Compensation.” In other words, the testifying attorney was explaining the impact that the noncriminal, administrative sanction would or could have on Mr. Car-roso; she was not establishing the monetary value of any loss or potential loss sustained by her client.
The State relied on this testimony to measure the “monetary value” of this crime by the amount it believed to be involved in the “forfeiture.” It convinced the trial court that, if Mr. Carroso lied in the deposition, he forfeited all payments made to him by the carrier — payments made before and payments made after the deposition — not merely payments that otherwise would be payable after an order of cessation of benefits. This, of course, is not even consistent with the law established by the First District regarding section 440.09(4)(a), much less with the conclusion we reach today that section 440.09(4)(a) has no bearing on the measure of “monetary value” in section 440.105(4).
Based on its theory, the State introduced into evidence about thirty checks sent by First Commercial to Mr. Carroso beginning on July 26, 2005, and ending on August 24, 2006. These checks were not identified by a witness. Instead, they were introduced pursuant to section 90.902(11), Florida Statutes (2010), by a certification from the Chief Financial Officer of the State of Florida establishing that the checks were business records of First Commercial, for whom the State’s Division of Rehabilitation and Liquidation was then the current receiver. There was similar proof that the checks had been negotiated by Mr. Carroso and deposited into his bank account.
Along with the checks, the Chief Financial Officer also certified a document entitled “Payments for a Claim” that lists all of the checks, indicating that they were “Indemnity” and “Temporary Total Disability.” These checks total about $27,000. Approximately $17,000 of this amount was sent to Mr. Carroso before he was deposed and the remainder was sent to him after the deposition.[6]
Mr. Carroso’s attorney objected to the admissibility of the checks, emphasizing the checks that were sent to him prior to the deposition. His attorney argued that even if the court were correct in treating these checks as a measure of “monetary value,” Mr. Carroso could not conceivably have made misrepresentations in the deposition for the purpose of receiving benefits that he had already received. The trial court overruled the objection and admitted all of the checks into evidence. The State relied in closing on the total amount of these checks as its measure of monetary value.
On the same theory, the trial court gave the jury a special jury instruction that was requested by the State over Mr. Carroso’s objection:
If you find the Defendant guilty of Workers’ Compensation fraud, you must further determine whether the State has proven beyond a reasonable doubt that the benefit received was $20,000 or more, but less than $100,000 or the benefit received was less than $20,000. A person shall not be entitled to compensation if any jury convened in this state determines that the employee has know *380 ingly or intentionally engaged in Workers’ Compensation Fraud.
(Emphasis added.)
We conclude that the trial court erred on both of these issues. The noncriminal, administrative sanction is largely, if not completely, irrelevant in this criminal proceeding as a measure of monetary value.[7] As properly administered by the judges of compensation claims, under the law established in the First District, the noncriminal sanction merely stops future benefits. Thus, it actually does not create any dollar measurement.
Even if the sanction resulted in a restitution order for prior benefits, that amount would be merely a measure of a civil sanction, penalizing the claimant. Such a sanction can actually result in an unexpected benefit for the carrier. The sanction allows the carrier to stop paying benefits that otherwise might often be payable.
Although we make no attempt to provide any comprehensive definition of “monetary value” for purposes of this statute, “monetary value” simply cannot be measured by other sanctions against the defendant; it cannot be measured by the administrative forfeiture in section 440.09(4). It would make no sense to measure the monetary value of the offense by an amount that is usually a benefit to the employer and the carrier, who are the apparent victims of. this crime. Logically, “monetary value” should be measured by some type of monetary loss or potential loss sustained by the employer or the carrier that has some relationship to the alleged misrepresentation.
The errors in this case, especially the error in the jury instruction, permitted the State to make a closing argument that incorrectly described the elements not only of the second-degree felony, but also of the third-degree felony that was a lesser offense. The instruction shifted the focus of the case from whether Mr. Carroso made misrepresentations for the purpose of obtaining benefits to whether he made misrepresentations that might result in an administrative sanction of forfeiture.
The shift in the focus of the case should not be underestimated because, as explained earlier, in a workers’ compensation case the existence of prior medical conditions does not necessarily preclude workers’ compensation benefits under the Florida Workers’ Compensation Law. Without these errors, the State would have been required to present a theory about why Mr. Carroso would misrepresent the rather modest medical matters involved in this case for the purpose of obtaining some benefit when it was undisputed that he had sustained work-related injuries that entitled him to significant benefits. Mr. Car-roso’s misrepresentations might have justified a noncriminal, administrative sanction under the First District’s nearly strict liability approach to section 440.09(4)(a), but in this criminal case the State was required to prove beyond a reasonable doubt that Mr. Carroso misrepresented his medical history for the purpose of obtaining a benefit. The improper evidence and jury instruction prevented the jury from addressing the real issue in the case. Accordingly, the errors can only be corrected by a new trial.
Reversed and remanded.
CRENSHAW, J., and CASE, JAMES R., Associate Senior Judge, Concur.

. The facts in this opinion about the accident and resulting medical treatment come from Mr. Carroso's deposition in the workers’ compensation case. No one argues that he misrepresented anything about these facts.

. The insurance company providing coverage was First Commercial Insurance Company. It apparently serviced claims through an entity described as First Commercial Claims Services. For purposes of this opinion, we describe both of these entities as First Commercial because the distinction between them would seem to make no legal difference in this context.

. Although this criminal case involves an alleged fraud related to Mr. Carroso's workers' compensation case, the record contains very little information about the workers' compensation case itself. The lack of information must have been confusing for both the judge and the jury during the trial and it has hampered our review. For example, if Mr. Carro-so filed a petition for benefits, it is not in this record. Except for the deposition, the record contains no pleadings or other documents filed in any workers’ compensation case. It contains no transcript of proceedings in such a case. The record has no copies of any compensation order or any other decision made by a judge of compensation claims. Although a lawyer represented Mr. Carroso during the taking of the deposition, that lawyer did not testify in this case. No employee of Sunwest testified at the criminal trial. The State did not present any evidence from Mr. Carroso's treating workers’ compensation physicians at this trial.

. In the context of this noncriminal sanction, the First District has explained:
When an objective misrepresentation has been made, the ultimate question a JCC must answer involves intent, that is, whether the claimant subjectively believed or intended the statement, when made, to be false, and whether the claimant subjectively believed the statement would assist him in securing workers’ compensation benefits. See Arreola v. Admin. Concepts, 17 So.3d 792, 794 (Fla. 1st DCA 2009). A claimant's state of mind is an issue of fact to be determined by the JCC by evaluating the evidence, including the credibility and demeanor of the witnesses. See id. It is not axiomatic that providing false information following a compensable accident will disqualify a Claimant from receiving benefits. Id.
Steel Dynamics Inc.-New Millennium v. Markham, 46 So.3d 641, 645 (Fla. 1st DCA 2010) (emphasis in original).

. It appears the tap does not close until such a ruling becomes final, in light of the provision in section 440.09(4)(c), that if the employee appeals the section 440.09(4)(a) ruling, a JCC "shall have the jurisdiction” to order that the flow of benefits be paid into the court registry or an escrow account during the pen-dency of the appeal.

. It is noteworthy that the checks have nothing on their face to indicate why First Commercial was sending the checks to Mr. Carro-so. The record contains no cover letters that may have been sent with the checks. The record does not explain who created the document entitled “payments for a claim” or what the "temporary total disability” designation meant to the person who created the document.

. Presumably, a verdict or judgment in the criminal case might be used in the workers’ compensation case as proof to obtain the administrative sanction. That does not require, however, that the jury be instructed on this statute.